IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KHIRUS E. WILLIAMS,            :
                               :
     Plaintiff,                :
                               :        CIVIL ACTION
v.                             :
                               :        NO. 1:12-CV-03723-TWT-ECS
CITY OF ATLANTA and POLICE CHIEF :
GEORGE N. TURNER,              :
                               :
     Defendants.               :

## ORDER, FINAL REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

## I.
## Introduction

On October 24, 2012, Plaintiff Khirus Williams ("Plaintiff") filed this civil action against Defendants City of Atlanta and Chief of Police George Turner in his individual capacity ("Defendants"), alleging violations of his civil rights arising in connection with Plaintiff's employment as a police officer with the City of Atlanta. [Doc. 1]. In particular, Plaintiff asserted claims for retaliation under the First Amendment (Count I); for race and gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts II, IV); for race discrimination in violation of 42 U.S.C. § 1981 via 42 U.S.C. § 1983 (Count III); and for gender discrimination in violation of the Equal Protection Clause of the

Fourteenth Amendment via 42 U.S.C. § 1983 (Count V).[1] [Id.]. Plaintiff seeks injunctive and declaratory relief, punitive and compensatory damages, and attorney's fees. [Id. at 21].

This matter is before the Court on Defendants' motion for summary judgment on all claims in the complaint. [Doc. 44]. Along with their reply to their motion for summary judgment, Defendants also filed a consent motion for an extension of the deadline for filing their reply brief, [Doc. 58], and an unopposed motion for leave to file excess pages with their reply brief, [Doc. 59]. Upon consideration, Defendants' motions for an extension of time and for leave to file excess pages, [Docs. 58, 59], are **GRANTED, nunc pro tunc**. For the reasons discussed herein, it is **RECOMMENDED** that Defendants' motion for summary judgment, [Doc. 44], be **GRANTED**.

## II.
## Factual Background

When evaluating the merits of a motion for summary judgment, the Court must view the evidence and factual inferences in a light most favorable to the non-moving party. Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001); Hairston v.

---

[1]   In his response to Defendants' motion for summary judgment, Plaintiff expressly abandoned his gender discrimination claims. [Doc. 55 at 3 n.2]. Therefore, the undersigned will not address Plaintiff's gender discrimination claims asserted under Title VII and the Fourteenth Amendment Equal Protection Clause and **RECOMMENDS** that Counts IV and V be **DISMISSED** on the grounds that they were **ABANDONED**.

Gainesville Sun Pub. Co., 9 F.3d 913, 920 (11th Cir. 1993). Applying the above standard, the Court derives the following facts from the parties' statements of facts and from the record as a whole:[2]

## A.   Background of Plaintiff's Employment with the Atlanta Police Department

Plaintiff was employed by the City of Atlanta Police Department ("APD") for nearly twenty-six years, from May 22, 1985, until May 11, 2011. Defs.' SMF ¶¶ 1, 41 [Doc. 44-1]; Pl.'s SMF ¶¶ 1, 91 [Doc. 57]. In June 2008, Plaintiff was appointed by then-Chief of Police Richard Pennington to the position of Police Major. Defs.' SMF ¶¶ 2, 3 [Doc. 44-1]; Pl.'s SMF ¶ 7 [Doc. 57]; Pl.'s Dep. 8:10-14 [Doc. 45-1 at 3]. The rank of major is a discretionary rank held at the pleasure of the Chief of Police. Def.'s SMF ¶ 4 [Doc. 44-1]. At the time that the circumstances giving rise to this civil action arose in 2011, Deputy Chief Ernest Finley was Plaintiff's immediate supervisor. Id. ¶ 6. Deputy Chief Finley reported directly to Assistant Chief Peter Andresen, and Assistant Chief Andresen reported directly to Chief of Police George Turner.[3] Id. ¶ 7; Pl.'s

---

[2]    Unless otherwise noted, this overview is taken from those facts in the parties' statements of material facts ("SMF") that have not been disputed. But even if a party disputes the admissibility of a material fact, the Court will deem the fact admitted unless the objecting party "states a valid objection to the admissibility of the movant's fact." LR 56.1.B.(2)a.(2)(ii); accord LR 56.1.B.(3)a.

[3]    In response to Defendant's SMF ¶ 7, Plaintiff admits that Assistant Chief Andresen reported directly to Chief Turner but

SMF ¶ 18 [Doc. 57]; Turner Dep. 27:12-25, 28:1-14 [Doc. 45-3 at 8].

As a Major for APD, Plaintiff served as the zone commander for APD's Zone 5[4] from June 2008 until May 11, 2011. Defs.' SMF ¶ 10 [Doc. 44-1]. His duties as zone commander were "to manage his geographic territory, including managing daily operations for 911 and administrative matters." Pl.'s SMF ¶ 17 [Doc. 57].

**B.   Plaintiff's Email to the Zone 5 Community**

On April 11, 2011, Plaintiff and Deputy Chief Finley had a discussion about making changes to Zone 5.  Defs.' SMF ¶ 11 [Doc. 44-1]; Pl.'s SMF ¶ 20 [Doc. 57]; see also Pl.'s SMF Ex. 19 [Doc. 57-6 at 4] (Deputy Chief Finley's April 12, 2011, email referencing a discussion "regarding the manpower issues in ... the Zone Five Main Precincts"). The next day, April 12, 2011, Deputy Chief Finley sent Plaintiff an email, copying Assistant Chief Andresen, stating:

Hello Khirus,

Per our discussion yesterday regarding the manpower issues in the Underground, Downtown, and the Zone Five Main Precincts, we both agree on the need to increase the

---

argues that it is not a material fact. Pl.'s Resp. Defs.' SMF ¶ 7 [Doc. 56 at 3]. But, Plaintiff alleges the same statement of fact in his SMF, which Defendants admitted. Pl.'s SMF ¶ 18 [Doc. 57]; Defs.' Resp. Pl.'s SMF ¶ 18 [Doc. 60]. Therefore, the undersigned will disregard Plaintiff's objection to this statement of fact and deem it admitted.

[4]   In 2011, Zone 5 encompassed an area of Atlanta that included Downtown, Midtown, Home Park, Old Fourth Ward, and the Auburn Avenue District. Turner Dep. 50:2-5 [Doc. 45-3 at 14].

4

number of personnel assigned the aforementioned units. Additional officers will be assigned to Zone Five as the Department increases its staff and the beat redesign rollout is implemented.

In the meantime, I am requesting your assistance in restructuring the Midtown Precinct mission from a discretionary function to a 911 service function. The Department's direction is to ensure that all beats are covered, including additional officers per shift (2 wagons, 2 umbrellas, truancy, traffic, and 1 officer in the precinct) to minimize the number of black out minutes. This restructuring process will make certain that the Zone Five Precinct 911 responders are in line with the direction of the city's mandates.

E.

Deputy Chief E. Finley

Field Operations Division Commander
Atlanta Police Department
226 Peachtree Street, SW
Atlanta, Georgia 30303

Pl.'s SMF Ex. 19 [Doc. 57-6 at 4]. The proposed changes were aimed

at maximizing personnel and minimizing the number of "blackout

minutes"[5] within Zone 5. Defs.' SMF ¶ 12 [Doc. 44-1]; Pl.'s SMF Ex.

19 [Doc. 57-6 at 4]. Plaintiff testified that he had concerns

regarding the public safety issues posed by Finley's plan to

---

[5]     Deputy Chief Finley testified that "blackout minutes" are the minutes when officers are "tied up on calls, they're not providing that specialized service that [APD] needed to ensure that the officers are visible, being seen, and patrolling the area." Finley Dep. 35:2-5 [Doc. 45-2 at 10]. Chief Turner testified that blackout minutes are minutes when "there would not be a unit available to respond" to a 911 call. Turner Dep. 77:21-21 [Doc. 45-3 at 21].

restructure Zone 5. Pl.'s Dep. 13:8-16:25 [Doc. 45-1 at 5]. Assistant Chief Andresen and Deputy Chief Finley testified that, when Finley sent the April 12 email, he had not yet made a formal decision as to the implementation of any Zone 5 restructuring. Andresen Dep. 306-20 [Doc. 44-2 at 9]; Finley Dep. 55:8-12 [Doc. 45-2 at 15]. "At this stage, the proposals would begin an internal discussion on how to optimize personnel within each precinct."[6] Defs.' SMF ¶ 16 [Doc. 44-1].

On the same day, April 12, 2011, Plaintiff responded to Deputy Chief Finley's email:

> Sir, our manpower concerns are present, due to COPS and other administrative decisions, above my level. Precisely, what are your recommendations? Also, we have proclamations and contracts with Crawford Long.
> Major Khirus E. Williams
> Atlanta Police Department
> Zone 5 commander
> 200 Spring Street
> Atlanta, Ga. 30303
> 404.658.7054 (office)
> 404.658.6484 (fax)

Pl.'s SMF Ex. 19 [Doc. 57-6 at 4]. Plaintiff testified that he also called Deputy Chief Finley on the telephone and requested a meeting

---

[6] Plaintiff admits this statement of fact but submits that it is not material. Pl.'s Resp. Defs.' SMF ¶ 16 [Doc. 56]. The undersigned finds that this statement of fact provides context for Plaintiff's speech to the Zone 5 community, which is a relevant consideration in weighing Plaintiff's First Amendment interests with the government's interest in controlling his speech. See infra Part III.B.1.b. Therefore, the objection is **OVERRULED**.

6

with the three chiefs in his chain of command, but Deputy Chief
Finley denied his request. Pl.'s Dep. 16:1-22 [Doc. 45-1 at 5];
Finley Dep. 57:17-24 [Doc. 45-2 at 16].

The following day, Deputy Chief Finley responded to Plaintiff's
email, copying Assistant Chief Andresen and Chief Turner, stating:
"Hello Khirus, It is my direct order that the Zone Five Midtown
Precinct operate as a 24-hour precinct with three beats by Thursday,
April 21, 2011. E." Id. [Doc. 57-6 at 3]. Plaintiff again responded
to Deputy Chief Finley's email on the same day:

> Respectfully, as requested, this requires more than
> just a[] direct order. Your order is similar to dividing
> Zone 5 into two Zones, unnecessarily. Realistically, it
> is with better odds to re-assign the Midtown Precinct's
> personnel to the Mobile Precinct, if your theory
> materializes. Manpower, supervision, cars, and variety of
> resources are required, under your order. Not to mention
> command memorandum, to say the least. As I mentioned, we
> are down in manpower, as the department's personnel
> orders (COP and other assignments) have raided us and we
> have not been replenished with additional staffing. As
> requested, this is a radical venture. One that has not
> included the consideration of all aspects. Logically, I
> prefer that we meet with the chief to identify problem,
> assess resolves, and collectively arrive at a rational
> decision, that has the best interest of our citizens, the
> City of Atlanta, and Zone 5.

> .... D/C E.N. Finley desires to totally change what
> several great leaders have implemented and kept intact?
> I assure you, removing Midtown's current mission will
> alienate the community from our department, especially
> when they have just provided this department with nearly
> 40,000 dollars, as they purchased this precinct a new
> Harley-Davidson motorcycle and two segways, which CANNOT
> be used in this community, under your new proposal. This
> is why it is best to discuss radical changes and not try

7

to make tough decisions without the input of others. I
would love to meet with you and the two chiefs on this
matter. If not, your proposal, directions, and expected
results will be needed in writing.

Best wishes,

Major Williams

Major Khirus E. Williams
Atlanta Police Department
Zone 5 commander
200 Spring Street
Atlanta, Ga. 30303
404.658.7054 (office)
404.658.6484 (fax)

Pl.'s SMF Ex. 19 [Doc. 57-6 at 3]. Then on Thursday, April 14, 2011,

having not received a reply to his previous email, Plaintiff wrote

to Deputy Chief Finley, carbon-copying Assistant Chief Andresen and

Chief Turner: "Good afternoon, are there updates on meeting with

Chief Turner. (sic) I never received a reply? (sic) Thank you, Major

Williams Major[;] Khirus E. Williams[;] Atlanta Police Department[;]

Zone 5 commander[;] 200 Spring Street[;] Atlanta, Ga. 30303[;]

404.658.7054 (office)[;] 404.658.6484 (fax)[.]" Id. [Doc. 57-6 at

2]. An hour later, Plaintiff sent another email to Deputy Chief

Finley, copying Andresen and Turner. Id. He wrote:

Good evening, I am very disappointed that you have
not responded. To ensure that the community is well aware
of your intentions, I will inform the two Council persons
for the Midtown area, the NPU chair, Susan Mendheim,
Colonel Mock, other business leaders, and residential
leaders of your desires. As you complete, in writing of
what this plan will consist of, I will update the
community so that they can be well informed of your

8

> desire. Please provide me with a comprehensive plan, in writing, so that can FULLY implement your desire and so that the Zone 5 personnel and our community understand your desire, without any misunderstanding. Upon me receiving your plan, I will implement it on the effective date.
>
> Major Williams
>
> Major Khirus E. Williams
> Atlanta Police Department
> Zone 5 commander
> 200 Spring Street
> Atlanta, Ga. 30303
> 404.658.7054 (office)
> 404.658.6484 (fax)

<u>Id.</u> The following day, April 15, 2011, Assistant Chief Andresen forwarded Plaintiff's emails to Chief Turner and wrote, "Chief, I have discussed this with [Deputy Chief Finley] and will follow up today. Please advise if you need an update. Pete[.]" Pl.'s SMF Ex. 20 [Doc. 57-7 at 1]; Pl.'s SMF ¶ 43 [Doc. 57].[7]

None of the three chiefs responded to Plaintiff's email until April 19. <u>See</u> Pl.'s SMF Ex. 19 [Doc. 57-6]. On April 19, 2011, Plaintiff sent a third follow-up email to Deputy Chief Finley, copying Assistant Chief Andresen and Chief Turner:

---

[7]    Defendants object to Plaintiff's SMF ¶ 43 on the ground that the statement is immaterial. Defs.' Resp. Pl.'s SMF ¶ 43 [Doc. 60]. The undersigned notes that Defendants do not deny this statement of fact and finds the statement material to Assistant Chief Andresen's job responsibilities and his suitability as a similarly situated comparator for the purpose of evaluating Plaintiff's Title VII claim. Therefore, the objection is overruled and the statement of fact is deemed admitted.

Good morning D/C Finley, as you complete your plan, restructuring Zone 5 (Midtown), please keep in mind that the four beats are currently managed, primarily, by beat cars (502, 503, 504, and 505). However, crime is managed with better results on Tuesdays - Saturdays. This is primarily due to the additional staffing that Midtown's personnel provides. However, they are only a five day operational unit and are off on Sundays and Mondays. As an example, please assess the shootings and kidnapping that we had a Club Sutra and at Atlantic Station last night. A sole beat car, in my opinion, will be less effective in this area. Nonetheless, we will implement whatever comprehensive plan that you formulate.

Thank you,

Major Williams

Major Khirus E. Williams
Atlanta Police Department
Zone 5 commander
200 Spring Street
Atlanta, Ga. 30303
404.658.7054 (office)
404.658.6484 (fax)

Id. [Doc. 57-6 at 1]. Two hours later, Deputy Chief Finley responded to Plaintiff's email, copying Andresen and Turner: "Good morning Major K. Williams, I want you to completely understand my instructions that were given to you on April 12, 2011. Per my instructions, you are directed to provide a proposal on the Restructuring the mission of the Zone Five Mid-Town Precinct. Thank you, Deputy Chief E. N. Finley[.]" Id.

Plaintiff responded seven minutes later, also copying Andresen and Turner, stating:

Sir, respectively, this is your vision, not my vision.

10

> Thus, I cannot formulate your ideas. I can implement them once you present a comprehensive plan. I propose that we keep things as is and add additional staffing to make this a seven day operations (sic). This is my proposal.
>
> Thanks you,
>
> Major Williams.

Id. Deputy Chief Finley and Plaintiff did not communicate by email again between Plaintiff's April 19 email to Finley and Plaintiff's April 20 email to the community. Defs.' SMF ¶ 25 [Doc. 44-1]; Pl.'s SMF Ex. 19 [Doc. 57-6].

On April 20, 2011, at 7:50 A.M., before he was officially "on duty" at APD, Plaintiff sent the following email from his City of Atlanta email address to twenty-nine community members outside of APD:

> Good morning, the Midtown Police Precinct current (sic) allows us the opportunity to have officers, 24 hours a day, to provide community oriented policing, via foot beats, segways, bicycles, and motorcycle patrols. We are also on fixed posts in some areas, such as the Peachtree Street and Pine Street Shelter and the Piedmont Park detail, to maintain order. However, D/C [Finley] is proposing to change the mission of this precinct and assign our officers as beat officers, responding to 911 calls, solely. Thus, motorcycle, segways, foot beat, bicycle, and Piedmont Park patrols would be efforts of the past. No more Officer Stevens to patrol Atlantic Station and the Home Park community. I suggest that you contact Chief Turner and express that Midtown deserves the officers' presence that have been in place for the past twenty years and by having "only" one officer to serve Beats 502, 503, 504, and 505, each, would be counter-productive, taking us back to the 1980's, when there were crime concerns here, due to lack of police presence, which is why the Midtown Precinct was

11

implemented. I assure you, there are too many citizens, residents, churches, businesses, and the city's most prominent park, for this area not to maintain its current level of staffing, which is in need of additional staffing. Just a year ago, at the Midtown Annual Breakfast, Chief Turner mentioned to the forum that the area needs more officers, which everyone applauded. Presently, he is not aware of the desire to remove our employees from their current mission, but you, as stake-holders, are asked to speak out on this matter and save your investments from ruin. In closing, as a great example, the Midtown Precinct's employees were off on Monday night (off days Sundays and Mondays) and Beats 502, 503, 504, and 505 were patrolled solely by the listed beat officer, unfortunate, without the additional presence of Midtown's staff, the area experienced a shooting at Club Sutura, and a home invasion at Atlantic Station, where gambling items were discovered (two poker tables and large number of poker chips). Without the additional presence of officers, the club scene would explode and suspicious persons would overwhelm our communities! Furthermore, more of these type of issues would be reported in the future. Please make difference to protect this great area! The chief's office number is 404.546.6900.

Yours,

Khirus E. Williams

Major Khirus E. Williams
Atlanta Police Department
Zone 5 commander
200 Spring Street
Atlanta, Ga. 30303
404.658.7054 (office)
404.658.6484 (fax)

Pl.'s SMF Ex. 24 [Doc. 57-11]; Pl.'s SMF ¶ 60 [Doc. 57].[8]

---

[8]    Plaintiff asserts that when he sent the April 20 email at 7:50 A.M., he was not yet "on duty." Pl.'s SMF ¶ 60 [Doc. 57]. Defendants deny this statement of fact, contending that "a major is always on duty." [Doc. 60 ¶ 60]. But, Defendants' denial is not

12

Plaintiff's April 20 email to the community was not authorized by anyone in his chain of command. Defs.' SMF ¶ 24 [Doc. 44-1]; Pl.'s SMF ¶ 61 [Doc. 57].

## C.   The Aftermath of Plaintiff's Email

In response to Plaintiff's April 20 email to the community, Chief Turner and Atlanta Mayor Kasim Reed received six emails from the Zone 5 community, and there was an "upswing" of concerns from the community. Pl.'s SMF ¶ 65 [Doc. 57]; Pl.'s SMF Ex. B [Doc. 57-3]. Several days after Plaintiff's April 20 email, Chief Turner and Plaintiff met to discuss Plaintiff's actions. Turner Dep. 123:1-4, 125:13-126:11 [Doc. 45-3 at 32, 33]; Pl.'s Dep. 20:7-21:13 [Doc. 45-1 at 6-7]. Plaintiff testified that Chief Turner told him that he was "mad at [Plaintiff] for sending this [email] out and [that he was] mad at Andresen because [he] told him to address this [issue] early on." Pl.'s Dep. 20:25-21:2 [Doc. 45-1 at 6-7]; Pl.'s SMF ¶ 73 [Doc. 57].[9] Plaintiff did not submit any proposals to Deputy Chief

---

supported by specific citations to evidence in the record, and therefore Plaintiff's statement of fact is deemed admitted. See LR 56.1.B(2)(a)(2), NDGa.

[9]     Defendants do not deny Plaintiff's SMF ¶ 73 but object to it on the ground that it is immaterial and that the evidentiary citation does not support the statement. Defs.' Resp. Pl.'s SMF ¶ 73 [Doc. 60]. But, Plaintiff contends that Assistant Chief Andresen is a Caucasian male who is a similarly situated comparator — whom Chief Turner was also "mad" at but was not disciplined — for the purpose of establishing a prima facie case of race discrimination. See [Doc. 55 at 27-28]. Thus this statement of fact it not immaterial. The

Finley as was requested in Finley's April 12 email. Pl.'s Decl ¶ 12 [Doc. 57-1].

The following week, no later than April 27, Plaintiff met again with Chief Turner, and this time, Assistant Chief Andresen was present at the meeting. Pl.'s SMF ¶ 79 [Doc. 57]. During the meeting, Chief Turner informed Plaintiff that he would be demoted to the position of Lieutenant in two weeks. Id. ¶ 80. Such a reassignment, from Major to Lieutenant, would result in a reduction in pay. Turner Dep. 187:24-88:10 [Doc. 45-3 at 49]. Assistant Chief Andresen was not disciplined for failing to communicate with Plaintiff about the circumstances leading to his scheduled demotion. Pl.'s SMF ¶ 75 [Doc. 57].[10]

---

undersigned also finds that the evidentiary citation provided by Plaintiff in support of ¶ 73 does support the statement. See Pl.'s Dep. 20:25-21:3 [Doc. 45-1 at 6-7]. Additionally, Chief Turner testified that he "could have said" that he was mad at Plaintiff for sending out the email and that he could "imagine that [he] would have said" that he was mad at Assistant Chief Andresen "for not addressing the matter with [Plaintiff] early on." Turner Dep. 141:21-142:6 [Doc. 45-3 at 37]. Accordingly, Defendant's objection to Plaintiff's SMF ¶ 73 is **OVERRULED**.

[10]     Defendants do not deny but object to Plaintiff's SMF ¶ 75 on the grounds that it is immaterial and that the evidentiary citation does not support the statement. Defs.' Resp. Pl.'s SMF ¶ 75 [Doc. 60]. For the same reasons discussed in note 9, Defendants' objection on the ground that the statement is immaterial is **OVERRULED**. Furthermore, the undersigned finds that the evidentiary citation provided by Plaintiff in support of SMF ¶ 75 does support that statement, and Defendants' objection on that basis is **OVERRULED** as well.

**D.    OPS Investigation Against Plaintiff**

On April 22, 2011, Deputy Chief Finley requested an investigation by APD's Office of Professional Standards ("OPS") for "Criticism of Department" and violating Section 4.1.04 of the APD Standard Operating Procedures. Defs.' SMF ¶ 37 [Doc. 44-1]; Pl.'s SMF Ex. D [Doc. 57-5]; Finley Dep. 67:22-24 [Doc. 45-2 at 18]. Deputy Chief Finley's memorandum to Major Dancy, who was the OPS commander, stated the following:

> On Wednesday, April 20, 2011, I learned that Major Khirus Williams distributed an e-mail titled "Restructuring of Zone 5's Midtown Precinct-PROPOSAL" to the constituents in Zone 5 that was critical of the Department and a proposed change to the function of the Midtown Precinct. He also failed to obey a directive from his immediate supervisor about the restructuring of this precinct. I have attached a copy of the relevant e-mails regarding these issues.
>
> Based on this information, I would like to request that OPS investigation (sic) be initiated into Major Khirus Williams' actions. Please let me know if you have any questions in regard to this request.
>
> ENF/mmf

Pl.'s SMF Ex. D [Doc. 57-5].

APD's Rule 4.1.04 states the following: "Employees shall not act in an official or private capacity in a manner that shall bring discredit upon the Department or themselves." Defs.' Ex. 7 to Pl.'s Dep. [Doc. 45-1 at 54]. An OPS investigation memorandum regarding the claims against Plaintiff also states that OPS began an

15

investigation against Plaintiff for alleged violations of APD Rule 4.2.09, "Obeying Supervisory Personnel." [Doc. 57-12]. Rule 4.2.09 states: "Employees shall promptly obey all proper and lawful orders of supervisors and other employees assigned to act in a supervisory capacity, including any order relayed from a superior by an employee of the same or lesser rank." Defs.' Ex. 7 to Pl.'s Dep. [Doc. 45-1 at 57].

**E.   Plaintiff's Retirement from APD**

On or about May 11, 2011, Plaintiff retired from his employment at APD. Defs.' SMF ¶ 41 [Doc. 44-1]; Pl.'s SMF ¶ 91 [Doc. 57].[11] Plaintiff testified that he chose to retire because he was going to be demoted, and did so before he was actually demoted to the rank of lieutenant. Pl.'s Dep. 43:8-15 [Doc. 45-1 at 12]; Defs.' SMF ¶ 31 [Doc. 44-1]. The OPS investigation of the allegations against Plaintiff was "exceptionally closed" on May 19, 2011, after Plaintiff retired. Defs.' SMF ¶¶ 41-42 [Doc. 44-1].

**III.**
**Defendants' Motion for Summary Judgment**

Defendants moved for summary judgment on all five of

---

[11]    Plaintiff's SMF ¶ 91 states: "The planned demotion was so unbearable to Major Williams that retirement was the only option, and he did so on May 11, 2011." [Doc. 57 at 17]. Regarding this statement of fact, Defendants admitted "only that Major Williams made a choice to retire." Defs.' Resp. Pl.'s SMF ¶ 91 [Doc. 60 at 14].

Plaintiff's claims. <u>See</u> [Doc. 44]. As noted above, Plaintiff has abandoned his gender discrimination claims under Title VII and the Fourteenth Amendment in Counts IV and V. [Doc. 55 at 3 n.2]. Therefore, the undersigned will only address Defendants' arguments for summary judgment regarding Plaintiff's Counts I, II, and III, asserting violations of his civil rights under the First Amendment, for retaliation, and under Title VII and Section 1981, for race discrimination.

## A.    **Legal Standard for Summary Judgment**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; <u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1432 (11th Cir. 1998). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (<u>quoting</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). The substantive law applicable to the case determines which facts are material. <u>Anderson</u>, 477 U.S. at 248.

The moving party bears the initial burden of showing the court "the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

17

demonstrate the absence of a genuine issue of material fact" and "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Four Parcels, 941 F.2d at 1437-38. If the moving party fails to discharge this initial burden, the motion must be denied. Fitzpatrick v. City of Atlanta, 2 F.3d 112, 1116 (11th Cir. 1993) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). If the burden is met, however, the non-moving party must then "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56).

**B.   Plaintiff's First Amendment Claim**

Plaintiff claims that Defendants violated his First Amendment rights by retaliating against him because he engaged in protected speech when he emailed community leaders regarding "security and safety issues that were a matter of public concern." [Doc. 1 at 12]. He alleges that Defendants demoted him, "thereby forcing him to retire from the [APD]," and refused to allow him to participate in the Reserves program. Id. at 12-13. Defendants seek summary judgment on Plaintiff's First Amendment claim, arguing that his First Amendment rights were not violated. [Doc. 44 at 3-9].

**1.   Were Plaintiff's First Amendment Rights Violated?**

To establish that Defendants retaliated against him in violation of his First Amendment free speech rights, Plaintiff, as

18

a government employee, must show that his speech was constitutionally protected and that his protected speech was a substantial or motivating factor in Defendants' decisions resulting in the adverse action. Boyce v. Andrew, 510 F.3d 1333, 1343 n.12 (11th Cir. 2007). To prevail on a retaliation claim under the four-part Pickering[12] test, a public employee must show that (1) his speech was made as a citizen on a matter of public concern; (2) his free speech interest outweighs the government's legitimate interest in efficient public service; and (3) the speech played a substantial part in the government's challenged employment decision. Id. If an employee satisfies his burden on the first three factors, the burden then shifts to the government employer to show by a preponderance of the evidence that (4) it would have made the same employment decision in the absence of the protected speech. Boyce, 510 F.3d at 1343 n.12 (quoting Cook v. Gwinnett Cnty. Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005)); see also Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). The first two parts are questions of law, and the last two are questions of fact. Cook, 414 F.3d at 1318.

>   **a. Did Plaintiff Speak as a Citizen on a Matter of Public Concern?**

The Court first must consider the threshold question of whether

---

[12]   Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, 391 U.S. 563 (1968).

Plaintiff spoke as a citizen on a matter of public concern. <u>Garcetti</u>, 547 U.S. at 418; <u>Boyce</u>, 510 F.3d at 1343. An employee's speech is considered a matter of public concern when it can be "fairly considered as relating to any matter of political, social, or other concern to the community." <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983); <u>accord</u> <u>Abdur-Rahman</u>, 567 F.3d at 1281-82. But, if the "employee speaks ... upon matters only of personal interest," then the employee's speech is not constitutionally protected. <u>Connick</u>, 461 U.S. at 147.

A public employee who speaks pursuant to his official duties is not speaking as a citizen for First Amendment purposes. <u>Garcetti</u>, 547 U.S. at 417-25; <u>Vila v. Padron</u>, 484 F.3d 1334, 1339-40 (11th Cir. 2007) (holding speech accusing defendant college of breaking laws was not a matter of public concern spoken as a citizen because "[a]s part of her job duties, [plaintiff] was directly in charge of legal affairs and it was her duty to ensure the College followed all laws"); <u>Boyce v. Andrew</u>, 510 F.3d at 1342 (court need not apply the <u>Pickering</u> test or consider whether speech involved matter of public concern if government employee was speaking as employee); <u>see also</u> <u>Abdur-Rahman v. Walker</u>, 567 F.3d 1278, 1283 (11th Cir. 2009) (holding speech was not a matter of public concern by a citizen because "[n]one of the statements in [the plaintiffs'] reports can reasonably be separated from [their] job duties . . . , and all of

20

their speech 'owes its existence to' those duties") (internal citation omitted).

In the present case, it is undisputed that Plaintiff spoke on a matter of public concern. In their reply brief, Defendants state: "For clarity of the record, Defendants specifically argued that Plaintiff did not speak on a matter of public concern on pages 4-6 of Defendants' Motion for Summary Judgment. Doc. 44." [Doc. 61 at 2 n.1]. Upon review of Defendants' motion for summary judgment, the undersigned notes that Defendants only addressed the issue of whether Plaintiff spoke "as a citizen." See [Doc. 44 at 4-6]. Furthermore, review of the email Plaintiff sent to Zone 5 community members shows that he spoke about his concerns that the proposed plan to restructure Zone 5 could cause an increase in crime and the presence of "suspicious persons." Courts in this circuit recognize speech related to public safety as a matter of public concern. See Cook, 414 F.3d at 1319 ("speech relating to the safety of the public involves a matter of public concern"); Weinstein v. City of N. Bay Village, 977 F. Supp. 2d 1271, 1284-85 (S.D. Fla. 2013).

Accordingly, the issue to determine is whether Plaintiff spoke "as a citizen" when he emailed the Zone 5 community on April 20. Defendants argue that Plaintiff did not speak as a citizen because his "speech specifically arises out of his position as a police commander and not as a private citizen." [Doc. 44 at 6]. In

21

response, Plaintiff argues that it was not within his job duties to communicate his concerns about a Zone 5 restructuring proposal to the community or to criticize the proposed changes. [Doc. 55 at 16].

In this case, it is certainly arguable that Plaintiff was speaking as a police department employee, rather than as a citizen, when he emailed the Zone 5 community. The subject matter of the email was directly within Plaintiff's duties as the Commander of Zone 5. Pl.'s SMF Ex. 24 [Doc. 57-11]. In fact, in his position as Commander, Plaintiff was the APD employee tasked with preparing the proposals requested by Deputy Chief Finley for implementing the restructuring project. Pl.'s SMF Ex. 19 at 4 [Doc. 57-6]. The email was written on Plaintiff's APD email account, and Plaintiff signed the email with his full name, followed by his title of Police Major in the APD and Commander of Zone 5. Pl.'s SMF Ex. 24 [Doc. 57-11]. To all intents, this communication appeared to be an official communication from a Major with the APD about matters within his area of command and responsibility. Furthermore, Plaintiff actually informed his chain of command that he intended to "update the community," Pl.'s SMF Ex. 19 at 2 [Doc. 57-6], which appears to be consistent with testimony that APD employees regularly interfaced with community and political leaders and shared plans with the public before they were implemented. Turner Dep. 117:2-7 [Doc. 45-3 at 31]. Under these circumstances, Plaintiff's email appears to have

22

been communicated as a part of or within the scope of Plaintiff's official duties as an employee of APD. See Abdur-Rahman, 564 F.3d at 1281-83 (finding plaintiffs did not speak as citizens because speech at issue was included in reports plaintiffs were required write pursuant to their official job duties).

At the same time, there is testimony from Chief Turner that Plaintiff was not authorized to send the April 20 email. Turner Dep. 213:24-214:10 [Doc. 45-3 at 55]. It is unclear whether Plaintiff was prohibited from ever communicating with the public by email, as he did in this case, or whether he was only prohibited from communicating in the specific manner in which he spoke in the email in this case. If the prohibition was general, then Plaintiff's speech in this circumstance may not be considered a part of his official responsibilities. See Garcetti, 547 U.S. at 424-25 (noting that the First Amendment protects some job-related statements or complaints not within official responsibilities).

On balance, however, the undersigned concludes that the prohibition was not general, and that the context in which the email was sent indicates that Plaintiff was acting as an employee in this situation, and not as a citizen on a matter of public concern.

23

       **b.   Did Plaintiff's Interest in Speaking Outweigh the Government's Legitimate Interest in Efficient Public Service?**

But even if Plaintiff were to be found to have spoken as a citizen on a matter of public concern, the Court would find that Plaintiff's speech was not protected. At this second stage of the analysis, the Court must weigh Plaintiff's First Amendment interests against the government's interest as an employer "in promoting the efficiency of the public services it performs through its employees." Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1289 (11th Cir. 2000) (internal citations and quotation marks omitted); Bryson v. City of Waycross, 888 F.2d 1562, 1567 (11th Cir. 1989) (citing Pickering, 391 U.S. at 568). In doing so, the court considers three factors: (1) whether the speech impedes the government's ability to perform its duties efficiently; (2) the time, place, and manner of the speech; and (3) the context within which the speech was made. Stanley, 219 F.3d at 1289 (internal citations and quotations omitted).

Though the court considers these three factors, there is no bright-line rule, and no single factor is determinative. Id. In particular, outcomes have diverged in police cases, id., because police departments have "more specialized concerns than a normal government office." Reid v. City of Atlanta, 1:08-cv-1846-JOF, 2010 WL 1138456 at *9 (N.D. Ga. Mar. 22, 2010); see also Hansen v.

24

Soldenwagner, 19 F.3d 573, 577 (11th Cir. 1994) (the "special concerns of quasi-military organizations such as police departments" must be considered in the Pickering balancing test).

In this case, the Court must weigh Plaintiff's interest as a citizen in voicing his concerns about the contemplated changes to Zone 5 ordered by the higher-ups as against the interests of the police department in promoting the efficiency of the police services it delivers; in maintaining close working relationships and mutual respect within the department; in maintaining a favorable reputation with the public; and by upholding discipline and the chain of command required in the quasi-military environment of a police department. See Hansen, 19 F.3d at 577 (recognizing that "[o]rder and morale are critical to successful police work: a police department is 'a paramilitary organization with a need to secure ... efficiency among the ranks due to its status as a quasi-military entity different from other public employers.'" (citations omitted)); Busby v. City of Orlando, 931 F.2d 764, 774 (11th Cir. 1991) (describing the unique need for maintaining loyalty, discipline, morale within a police department and a favorable reputation with the public).

Here, there is evidence that Plaintiff's speech actually impeded the department's ability to perform its duties efficiently, although proof of actual disruption is not necessarily required.

25

Gresham v. City of Atlanta, 542 F. App'x 817, 819 (11th Cir. 2013); see also Connick, 461 U.S. at 150 (district court erred in requiring government to "clearly demonstrate that the speech involved substantially interfered with official responsibilities"). The record shows that Plaintiff's email was published right at the time the APD was attempting to formulate certain policy changes to Zone 5. The email stimulated an "upswing" in emails and telephone calls from the members of the community to Chief Turner voicing opposition to the plan to restructure Zone 5. Pl.'s SMF ¶¶ 65, 69 [Doc. 57]. Atlanta Mayor Kasim Reed also received phone calls from community members concerned about the plan. Id. Indeed, one purpose of Plaintiff's email was expressly to encourage the recipients to contact the APD and speak out in opposition to the contemplated changes that Plaintiff had been directed to formulate and carry out as part of his job. Pl.'s SMF Ex. 24 [Doc. 57-11]. Ultimately, no restructuring plan was ever implemented. Turner Dep. 148:19-21 [Doc. 45-3 at 38].

Additionally, Plaintiff's interest in expressing himself at the time and in the manner that he chose does not outweigh the government's interests, in carrying out its operations efficiently. He sent the April 20 email to twenty-nine community members from his APD email account shortly before officially going on duty on a workday on April 20, after having been directed on April 12, 2014,

26

to provide a proposal on restructuring that he had yet to propose. Pl.'s SMF Ex. 19; [Doc. 57-6]; Id. Ex. 24 [Doc. 57-11]. Even if Plaintiff believed that the proposals for change were inimical to the interests of police protection in Zone 5, and posed a due threat to public safety, he released his critical email even before the process of formulating the plan for change had been contemplated. Cf. Bryson, 888 F.2d at 1567 (police officer's speech not protected because it was not "confined ... to the proper time, place, and manner" when he "chose to spend police department time broadcasting his rancor" thus disrupting the department's efficient functioning). Plaintiff chose to send the April 20 email to the Zone 5 community just eight days after receiving the request for proposals, criticizing the APD without having made any proposals to Finley within the chain of command to attempt to address his public safety concerns within the department. Pl.'s SMF Ex. 19; [Doc. 57-6]; Id. Ex. 24 [Doc. 57-11].

Upon consideration of the balancing test factors, the undersigned concludes that interests of the police department in promoting the efficiency of the public services it performs through its employees outweighs the free speech interest of Plaintiff in voicing his concerns outside the department regarding an ongoing, developing plan for allocation of police resources. The effect and purpose of the email was to undermine confidence in the APD.

27

Therefore, Plaintiff's speech was not protected by the First Amendment, and no violation of his rights occurred when he was threatened with demotion for his conduct. See <u>Oladeinde v. City of Birmingham</u>, 230 F.3d 1275, 1294 (11th Cir. 2000) (concluding plaintiffs' speech not protected and no First Amendment violation occurred because their interests were outweighed by police department's interests in maintaining order, loyalty, morale, and harmony, which were disrupted by plaintiffs' speech).

> **c.  Did Plaintiff's Speech Play a Substantial Part in the Challenged Employment Action? And Would Defendant Have Made the Same Employment Decision in Absence of Protected Speech?**

Defendants make no arguments regarding the third and fourth prongs of the <u>Pickering</u> analysis, namely whether the speech played a substantial part in the government's employment decision and whether it would have made the same decision in absence of the protected speech. <u>See generally</u> [Docs. 44, 61]. But because the undersigned finds that Plaintiff's free speech interests do not outweigh Defendants' heightened interest in efficient public service, and Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim, the Court need not consider the remaining two prongs of the <u>Pickering</u> retaliation analysis. <u>See Oladeinde</u>, 230 F.3d at 1294 ("Because the plaintiffs have not demonstrated a violation of a right protected by the First

Amendment, we need not ... consider whether their transfers, and the failure to promote Sergeant Oladeinde were retaliatory.").

Accordingly, it is **RECOMMENDED** that Defendants' motion for summary judgment, [Doc. 44], be **GRANTED** as to Plaintiff's First Amendment claim (Count I) for the reasons stated above.

## C.   Plaintiff's Race Discrimination Claims

Plaintiff claims that Defendant City of Atlanta, through the actions of Chief Turner, discriminated against him based on his race in violation of Title VII and § 1981 when he was scheduled to be demoted, thus leading to his early retirement from the APD. [Doc. 1 ¶¶ 60-75]. Defendants argue that Plaintiff's discrimination claims fail because Plaintiff cannot establish a prima facie case or overcome Defendants' legitimate reasons for its alleged actions. [Doc. 44 at 10-14].

Claims brought under Title VII and § 1981 have the same requirements of proof and use the same analytical framework. <u>See</u> <u>Bryant v. Jones</u>, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009)(noting that discrimination claims brought under the Equal Protection Clause, § 1981, or Title VII are subject to the same standards and employ the same analytical framework). The following analysis of Plaintiff's Title VII claims applies equally to his § 1981 claim, and thus dictates the same result.

AO 72A
(Rev.8/82)

1.    **Applicable Law**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[13] Under Title VII, the plaintiff bears the ultimate burden of persuading the factfinder that the defendant intentionally discriminated against him. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093 (1981). A plaintiff may meet this burden by presenting either direct or circumstantial evidence of discriminatory intent. EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002); Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1555-56 (11th Cir. 1995); Green v. Sch. Bd. of Hillsborough Cnty., 25 F.3d 974, 977-78 (11th Cir. 1994).

If, as in this case, the plaintiff does not contend that he has direct evidence of discriminatory intent, the plaintiff may present circumstantial evidence permitting an inference of intentional discrimination. Burdine, 450 U.S. at 253, 101 S. Ct. at 1093; Joe's Stone Crabs, Inc., 296 F.3d at 1272; Walker, 53 F.3d at 1555-56;

---

[13]    Under § 1981, "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a).

Green, 25 F.3d at 978. Generally, a plaintiff presents a disparate treatment claim supported by circumstantial evidence by employing the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and refined in Burdine, 450 U.S. at 252-53, 101 S. Ct. at 1093.

Under the McDonnell Douglas framework: (1) the plaintiff first has the burden of establishing a prima facie case of discrimination, which entitles him to a rebuttable presumption of discriminatory intent by the employer; (2) once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if the employer makes this showing, the presumption of discriminatory intent vanishes and the plaintiff must show that the proffered reason is a mere pretext for discrimination. See Burdine, 450 U.S. at 254, 101 S. Ct. at 1094; McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. at 1825; Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997); Richardson v. Leeds Police Dep't, 71 F.3d 801, 805-06 (11th Cir. 1995) (per curiam); Roberts v. Gadsden Mem'l Hosp., 835 F.2d 793, 796 (11th Cir. 1988).

**2.   Plaintiff's Prima Facie Case of Race Discrimination**

Plaintiff may establish a prima facie case of a discriminatory demotion under Title VII and § 1981 by showing that (1) he is a member of a protected class; (2) he was qualified for the position

31

he occupied; (3) he was demoted; and (4) his employer treated similarly situated employees outside of the protected class more favorably. See Sturniolo v. Sheaffer, Eaton, Inc., 15 F.3d 1023, 1025 (11th Cir. 1994) (citing McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824); Blue v. Dunn Const. Co., Inc., 453 F. App'x 881, 885 (11th Cir. 2011) (citing Burke-Fowler, 447 F.3d at 1323); Underwood v. Northport Health Servs., Inc., 57 F. Supp. 2d 1289, 1300 (M.D. Ala. 1999). "The burden of establishing a prima facie case of disparate treatment is not onerous." Burdine, 450 U.S. at 253, 101 S. Ct. at 1094.

Here, Defendants do not dispute Plaintiff's membership in a protected class or that Plaintiff was qualified for the position that he held. See [Doc. 44 at 10]. But Defendants contend that Plaintiff's claims fail because (1) he cannot show that he was subjected to an adverse employment action and (2) he cannot show that his employer treated similarly situated employees outside of his protected class more favorably. [Doc. 44 at 10-14].

### a. Was Plaintiff Subjected to an Adverse Employment Action?

To be considered an "adverse employment action" under Title VII, a particular act must constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

32

decision causing a significant change in benefits." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998). It is well established that a demotion may be an adverse employment action under Title VII. <u>Stavropoulos v. Firestone</u>, 361 F.3d 610, 619 (11th Cir. 2004) (quoting <u>McCabe v. Sharrett</u>, 12 F.3d 1558, 1563 (11th Cir. 1994)) ("'Adverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands."); <u>Goffer v. Marbury</u>, 956 F.2d 1045, 1049 n.1 (11th Cir. 1992) (listing adverse employment actions: "refusal to hire, demotion, reprimand, refusal to promote"). In the context of an unlawful demotion claim, the plaintiff must show he was assigned "significantly different responsibilities" or his employer made a decision that "caus[ed] a significant change in benefits." <u>Webb-Edwards v. Orange Cnty. Sheriff's Office</u>, 525 F.3d 1013, 1031 (11th Cir. 2008) (internal quotation marks omitted); <u>Kidd v. Mando Am. Corp.</u>, 731 F.3d 1196, 1203 (11th Cir. 2013); <u>Doe v. Dekalb County Sch. Dist.</u>, 145 F.3d 1441, 1448-53 (11th Cir. 1998) ("Transfers that result in lesser pay, responsibilities, or prestige will still be adverse.") (internal quotation marks omitted).

Defendants dispute that Plaintiff suffered an adverse employment action because he chose to retire before the effective date of his demotion. In this case, Chief Turner made the decision

33

to demote Plaintiff from the position of Major to the position of Lieutenant and gave Plaintiff two weeks' notice that the demotion would occur. Pl.'s SMF ¶ 80 [Doc. 57]; Turner Dep. 149:7-10 [Doc. 45-3 at 39]. The demotion would have resulted in a reduction in pay and, potentially, a reduction in his pension benefits because he served as a Major for less than three full years. Pl.'s SMF ¶¶ 7, 80 [Doc. 57]; Turner Dep. 187:24-88:10 [Doc. 45-3 at 48]. This scheduled demotion clearly would have constituted an adverse employment action when it became effective. <u>Hinson v. Clinch Cnty., Ga. Bd. Of Educ.</u>, 2321 F.3d 821, 829 (11th Cir. 2000) ("Transferring an employee to a job with lower pay is an adverse employment action."); <u>Fitzhugh v. Topetzes</u>, No. 1:04-CV-3258, 2006 WL 2557921, at *8 (N.D. Ga. Sept. 1, 2006) (plaintiff's demotion and reduction in pay upon demotion constituted adverse employment actions under Title VII); <u>cf.</u> <u>Kidd</u>, 731 F.3d at 1203 (finding no adverse employment action where plaintiff suffered no decrease in pay or loss of title).

The issue to decide, therefore, is whether Plaintiff suffered an adverse employment action even though he chose to retire before the demotion became effective. In <u>Chardon v. Fernandez</u>,[14] the Supreme Court, determining when the statute of limitations began to

---

[14]    454 U.S. 6 (1981).

run on a Title VII claim for discriminatory termination, concluded that the cause of action accrued when the relevant employment decision was made and communicated to the employee, rather than at the time that the consequences of that employment decision were realized. The Court noted that "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." Id. at 8 (emphasis in original) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980)).

In Nance v. Maxwell Fed'l Credit Union, 186 F.3d 1338 (11th Cir. 1999), the Eleventh Circuit applied Chardon to determine whether an adverse employment action occurred when an employer made the decision to demote or discharge an employee and notified her of that decision, but later rescinded the decision while she was on a paid leave of absence. In that case, the plaintiff was held to have suffered an adverse employment action when her employer gave her the option of accepting a demotion or being discharged with severance, even though she chose to take a fully-paid leave of absence instead of either option, during which time the employer rescinded the offer and asked her to return. Id. The court reasoned that the employer's decision to demote or discharge the plaintiff constituted an adverse employment action even though the employer later changed its mind and the consequences did not materialize. Id. As in Nance, Chief Turner decided to demote Plaintiff from Major to Lieutenant and

35

communicated that decision to him, but the consequences of the demotion were never realized because he retired rather than suffer those consequences. His retirement did not change the fact that the decision to demote him was a fait accompli. Nance, 186 F.3d at 1341. Therefore, I find that the decision to demote Plaintiff was an adverse employment action for the purpose of Plaintiff's prima facie case. Id.

> **b.   Was Assistant Chief Andresen a Similarly Situated Comparator?**

Defendants also contend that Plaintiff cannot make out a prima facie case because he cannot show that a similarly situated employee outside of his protected class was treated more favorably. [Doc. 44 at 11]. Plaintiff responds that Assistant Chief Andresen, a Caucasian male on the command staff, was not disciplined for failing to prevent Plaintiff from sending his April 20 email, and that he is a similarly situated comparator. [Doc. 55 at 27-28].

To determine whether employees are similarly situated, the court must evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Burke-Fowler, 447 F.3d at 1323 (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)). A plaintiff must show that he and the comparator employee are "similarly situated in all relevant respects." Brown v. Ala. Dep't of Transp., 597 F.3d

1160, 1174 (11th Cir. 2010) (quoting <u>Holifield v. Reno</u>, 115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam)). In making such a determination, "the quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." <u>McCann v. Tillman</u>, 526 F.3d 1370, 1373 (11th Cir. 2008) (quoting <u>Burke-Fowler</u>, 447 F.3d at 1323). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." <u>Holifield</u>, 115 F.3d at 1562 (citing <u>Mack v. Great Atl. & Pac. Tea Co.</u>, 871 F.2d 179, 182 (1st Cir. 1989)).

In this case, Plaintiff has failed to show that Assistant Chief Andresen engaged in similar misconduct and was more favorably treated. The record shows that Plaintiff resisted following a direct order from Deputy Chief Finley to provide proposals for the restructuring of Zone 5, Pl.'s SMF Ex. 19 [Doc. 57-6], and instead sent an unauthorized email to twenty-nine Zone 5 community members, prematurely disclosing information to them about the plan to restructure and encouraging them to express their opposition to the contemplated changes, Pl.'s SMF Ex. 24 [Doc. 57-11]. On the other hand, Andresen stands charged by Plaintiff with failing to uphold his responsibility to follow up with Plaintiff regarding his emails and to instruct him not to send the subject email. [Doc. 55 at 27].

AO 72A
(Rev.8/82)

Andresen is not charged with failing to obey any direct orders from his superior officers, nor did he compose the email or approve it, or participate in its dissemination. Failing to stop Plaintiff is not "nearly identical" conduct comparable to Plaintiff's conduct in composing and sending the unauthorized email. Thus, in other words, Plaintiff and Assistant Chief Andresen were not "accused of the same or similar conduct," Burke-Fowler, 447 F.3d at 1323, and, for this reason, are not "similarly situated in all relevant respects" for purposes of making out a prima facie case. Brown, 597 F.3d at 1174.

Accordingly, for the above reasons, the Court finds that Plaintiff cannot establish a prima facie case of race discrimination. Summary judgment on Plaintiff's Title VII and Section 1981 claims should be granted.

### 3.   Legitimate, Non-discriminatory Reasons

Even assuming, arguendo, that Plaintiff could establish a prima facie case of race discrimination, Plaintiff could not survive summary judgment in this case on the race claims. Once a prima facie case is made, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for his demotion. An employer's burden to articulate a non-discriminatory reason is a burden of production, not persuasion. Burdine, 450 U.S. at 254, 101 S. Ct. at 1094. As this burden involves no credibility determination, it has been characterized as "exceedingly light."

38

<u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d 763, 769-70 (11th Cir. 2005) (quoting <u>Perryman v. Johnson Prods. Co.</u>, 698 F.2d 1138, 1141 (11th Cir. 1983)). "So long as the employer articulates 'a clear and reasonably specific' non-discriminatory basis for its actions, it has discharged its burden of production." <u>Vessels</u>, 408 F.3d at 770 (quoting <u>Burdine</u>, 450 U.S. at 258, 101 S. Ct. at 1096).

In this case, Defendants assert that Plaintiff was demoted "as a result of his failure to obey a direct command from his chain of command and because his actions brought discredit to the Atlanta Police Department." [Doc. 44 at 12]. This is sufficient to satisfy Defendant's burden of articulating a legitimate, non-discriminatory reason for scheduling Plaintiff's demotion from Major to Lieutenant. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747 (1993); <u>Burdine</u>, 450 U.S. at 258, 101 S. Ct. at 1096.

### 4.   **Pretext**

Because Defendant has articulated a legitimate, non-discriminatory reason, in order to survive summary judgment Plaintiff must point to evidence that creates a genuine issue of material fact as to pretext. <u>McDonnell Douglas</u>, 411 U.S. at 804-07, 93 S. Ct. at 1825-27. Plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." <u>Burdine</u>, 450 U.S. at 253, 101 S. Ct. at 1093.

39

An employee may establish pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). The employee "must meet the reason proffered head on and rebut it." Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007) (citing Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004)). "The relevant inquiry on the issue of pretext is whether the employer's proffered reason was a cover-up for a discriminatory action." Ivey v. Paulson, 222 F. App'x 815, 818 (11th Cir. 2007) (citing Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002)).

Here, Plaintiff argues that each of Defendants' three legitimate non-discriminatory reasons for demoting him are pretext in this case. See [Doc. 55 at 29-32]. First, regarding Defendants' justification for the demotion that Plaintiff "fail[ed] to obey a direct command from his chain of command," [Doc. 44 at 12], Plaintiff states that he "repeatedly attempted to use his chain of command and was ignored." [Id. at 29]. He notes that he sent five emails to his chain of command, in which he attempted to engage in a discussion regarding the requested restructuring proposals. [Id. at 30]. Additionally, he points out that he informed his chain of

40

command that he intended to email the Zone 5 community. [Id.].

This evidence, however, does not meet Defendants' proffered reason "head on." Crawford, 482 F.3d at 1308. Defendants do not state that Plaintiff failed to use his chain of command; instead, Defendants argue that the decision to demote Plaintiff was warranted by his failure to obey his chain of command and because his actions brought discredit upon the APD in violation of APD SOP 4.1.04. Indeed, the record shows that Deputy Chief Finley directed Plaintiff to provide him with proposals regarding the restructuring of Zone 5 and that Plaintiff failed to do so, instead going outside the chain of command with his email. Pl.'s SMF Ex. 19 [Doc. 57-6]; Pl.'s Decl. ¶ 12 [Doc. 57-1].

Second, with respect to Defendants' assertion that Plaintiff released information to the community without authorization, Plaintiff points to testimony that the information he shared is "regularly discussed" with the community before a plan is finalized. [Doc. 55 at 30]. But Defendants have shown that Plaintiff released information to the community regarding APD's plans to restructure Zone 5 without authorization and in violation of APD's Standard Operating Procedure 4.1.04, which states that "[e]mployees shall not act in an official or private capacity in a manner that shall bring discredit upon the Department or themselves." Defs.' SMF ¶¶ 37, 38 [Doc. 44-1]; Id. Ex. 7 at 54 [Doc. 45-1].

41

Finally, Plaintiff responds to Defendants' "serious concerns" about his management style by calling them "laughable." [Doc. 55 at 30]. Plaintiff points to testimony from his chain of command reporting that his performance was "exemplary" and that he was a "highly effective" Major. [Id. (citing Turner Dep. 45:12-16, 47:2-24, 141:14-20, 215:12; Andresen Dep. 37:8-14, 44:15-25, 45:9-23; Pl.'s Dep. 8:5-11, 15-18)]. Plaintiff also notes that he was never disciplined and never given a negative performance review in his career with APD. [Id.].

On the other hand, Defendants rely on the conclusory statement that "there were serious concerns regarding Plaintiff's management style," without any citation to evidence in the record. See [Doc. 44 at 12]. The record shows that Chief Turner spoke with Plaintiff on one occasion and instructed him to request an executive coach from Human Resources after a complaint was made by a Lieutenant regarding Plaintiff's communication with his subordinates. Turner Dep. 214:25-215:25 [Doc. 45-3 at 55]. And a review of the email trails in this case regarding the Zone 5 changes, [Docs. 57-6; 57-7], shows that Plaintiff resisted Deputy Chief Finley's requests for proposals. The emails also indicate dissatisfaction with Plaintiff's response to directives from his chain of command. His conduct in this regard could be considered to reflect negatively on his "management style." But the Court agrees that, while this criticism

42

is conclusory and subjective, it does not suggest pretext for discrimination.

Plaintiff's arguments for pretext simply fail to demonstrate that Defendants' proffered reasons for scheduling demoting Plaintiff were a "cover-up for a discriminatory action." Ivey, 222 F. App'x at 818. Even conceding that Defendants' third reason given for Plaintiff's scheduled demotion is conclusory and not well-supported, Plaintiff points to no evidence, no "convincing mosaic," Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011), that would suggest that Defendants' actions, in demoting Plaintiff and starting an OPS investigation, were motivated by any racial animus. There is not a whiff of evidence to suggest that race was an issue in this case.

In sum, Plaintiff has failed to point to evidence in the record that creates a genuine issue of material fact as to whether Defendants' proffered legitimate, non-discriminatory reasons for scheduling his demotion were pretext for racial discrimination. McDonnell Douglas, 411 U.S. at 804-07, 93 S. Ct. at 1825-27. Accordingly, IT IS **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's claim for race discrimination under Title VII (Count II) and Section 1981 (Count III).

AO 72A
(Rev.8/82)

**IV.**
**Conclusion**

For the reasons discussed herein, it is **RECOMMENDED** that Defendants' motion for summary judgment, [Doc. 44], be **GRANTED** and that judgment be entered in favor of Defendants on all claims. The undersigned also **GRANTS, nunc pro tunc,** Defendants' motions for an extension of time to file a reply brief and for leave to exceed the page limit in their reply brief. [Docs. 58, 59].

The Clerk is **DIRECTED** to terminate this reference to the undersigned magistrate judge.


**SO ORDERED, REPORTED AND RECOMMENDED**, this 11th day of August, 2014.


_s/ E. Clayton Scofield III_
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)